**IN THE UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**
No. 93-8775

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILL ARTHUR PALMER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

(October 27, 1994)

Before REAVLEY, DeMOSS and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Palmer was tried and convicted by jury of being a convicted felon in possession of a firearm (Count 1), in violation of 18 U.S.C. §§ 922(g), 924(e), and of possessing an unregistered sawed-off shotgun (Count 2), in violation of 26 U.S.C. § 5861. He appeals his conviction, asserting that (1) after the parties had stipulated that he had a prior felony conviction, the district court impermissibly allowed the government to present evidence of his prior felony conviction and parole term, and (2) some of the prosecutor's comments during oral argument deprived him of a fair trial. We affirm.

### FACTS

On November 19, 1992, two San Antonio Police Department patrol officers observed Will Palmer walking toward them on Micklejohn

Street.  Palmer was wearing a dark colored trench coat, and it appeared to the officers that he carried something underneath his coat.  As the officers stopped and got out of their patrol car, Palmer ran.  The officers chased him and observed him throw down a long dark object as he jumped over a fence.  They apprehended Palmer shortly thereafter.  One of the officers returned to the area where the dark object was thrown down and found a sawed-off shotgun.

Will Palmer had been convicted previously of murder without malice and was on parole for life.  He was indicted for count one, being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g), and count two, being in possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. § 5861.

Relative to the § 922(g) offense, the parties stipulated that Palmer had a prior felony conviction and that Palmer "is guilty of the prior conviction element of Count One of the instant indictment."

Palmer filed a motion in limine "seeking to exclude any evidence of prior conviction, or other crimes, wrongs, and acts and the fact of the prior conviction," on grounds of the stipulation. In the supporting memorandum, he argued that such evidence was irrelevant under Fed.R.Evid. 402, but that "if relevant to a particular issue, pursuant to Rule 404(b), such evidence is excludable at the court's discretion, under Rule 403, for reasons

2

of prejudice."[1]  Prior to trial, the defense objected to the introduction of testimony by Palmer's state parole officer and evidence of his parole-release conditions, citing Rules 401, 403, and 404(b) and this Court's opinion in United States v. Beechum, 582 F.2d 898 (5th Cir. 1978) (en banc), cert. denied, 440 U.S. 920 (1979).  The government responded: "We're offering [the parole officer's] testimony as circumstantial evidence the Defendant knew he could not possess a gun . . . as a condition of his parole.  He also knew that he couldn't violate local, state, municipal, and federal laws.  It also goes to show why he ran from the police that night."  The court overruled the defense objections.

The first government trial witness was Palmer's state parole officer, Maria Ramirez.  She testified about the fact of Palmer's status as a felon and about his knowledge of the conditions of parole.  The government then offered into evidence Palmer's certificate of parole as government Exhibit 1.  The certificate indicated that he was aware of the rules.  It also stated that his parole term was "Life" and that he was required to undergo drug and alcohol treatment as a special condition of parole.

Defense counsel objected to introduction of the certificate based on the grounds stated in the motion in limine, particularly the stipulation of admission that's of record in this case.  The

---

[1]  Federal Rule of Evidence 403 provides as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

court overruled this objection.  Upon completion of all the evidence, charging of the jury, and closing arguments of counsel, the jury found Palmer guilty as charged.  The district court sentenced him on count one to 262 months, to be followed by five years of supervised release, and on count two to 120 months, to be followed by three years of supervised release.  Both the terms of imprisonment and the terms of supervised release are to be served concurrently.  Palmer appeals his convictions.

DISCUSSION

Palmer contends first that the stipulation rendered irrelevant all evidence of his prior conviction and that the admission of this evidence was reversible error.  We review a trial court's evidentiary rulings and determinations of relevance for abuse of discretion.[2] <u>United States v. Lopez</u>, 979 F.2d 1024, 1032 (5th Cir. 1992), <u>cert. denied</u> <u>sub nom.</u>, <u>Ramirez v. United States</u>, __ U.S. __ 113 S.Ct. 2349, 124 L.Ed.2d 258 (1993); <u>United States v. Williams</u>, 900 F.2d 823 (5th Cir. 1990).

---

[2]    The government points out that (1) Palmer did not present to the district court his argument that the contents of the certificate are prejudicial, and (2) regarding the parole certificate, Palmer requested neither redaction of irrelevant portions nor any limiting instruction.  For these reasons, the government asserts that "plain error" is the correct standard of review for Palmer's objection to specified contents of the certificate.  We disagree because Palmer's objection included references to the Fed.R.Evid. 403 balancing test which we find sufficiently specific to preserve for appeal the issue of the certificate's prejudicial effect.  <u>See and compare</u>, <u>United States v. Jiminez Lopez</u>, 873 F.2d 769, 773 (5th Cir. 1989); Fed.R.Evid. 103(a)(1).  Given Palmer's timely objections to the admission of this certificate, Palmer was not required to attempt to make the certificate properly admissible.  <u>See and compare</u>, <u>United States v. Morrow</u>, 537 F.2d 120, 145 n.38 (5th Cir. 1976).

4

The Effect of the Stipulation

As a general rule, a party may not preclude his adversary's proof by an admission or offer to stipulate. United States v. Spletzer, 535 F.2d 950, 955 (5th Cir. 1976); United States v. Ponce, 8 F.3d 989, 993 (5th Cir. 1993). Nonetheless, this principle, like all rules of evidence, is subject to the provision that where the probative value of relevant evidence is substantially outweighed by its potential for unfair prejudice, it should be excluded. Spletzer, Id.; Fed.R.Evid. 403. An important consideration relating to probative value is the prosecutorial need for such evidence. Spletzer, Id. Another central consideration in determining probative value is how strongly the proffered evidence tends to prove an issue of consequence in the litigation. See United States v. Beechum, 582 F.2d 898, 914-915 (5th Cir. 1978) (en banc) cited in United States v. Grassi, 602 F.2d 1192 (5th Cir. 1979), vacated and remanded, 448 U.S. 902, 100 S.Ct. 3041, 65 L.Ed.2d 1131, on remand, 626 F.2d 444 (5th Cir. 1980).

As stated by the First Circuit (en banc), "[a] decision to honor a stipulation concerning the predicate crime in a felon-in-possession case in no way trenches upon the right of the prosecution to make a full presentation of the crime currently charged." United States v. Tavares, 21 F.3d 1, 3 (1st Cir. 1994). After a stipulation of the fact of a predicate conviction for the felon in possession of a firearm offense, the legal question of status is still a relevant issue; however, the predicate crime is significant only to demonstrate status, and the issue of status

5

does not depend upon the probative value of the evidence.  <u>See and compare</u>, <u>United States v. Chapman</u>, 7 F.3d 66, 69 (5th Cir. 1993); <u>see also</u>, <u>Tavares</u>, 21 F.3d at 4.

<u>Admissibility of the Stipulation and Ramirez' Testimony</u>

Ramirez testified that as Palmer's parole supervisor, she had explained to him the rules by which he had to abide as a parolee. These included the condition that he obey all municipal, county, and federal laws and that he may not possess or have any type of weapon or illegal weapon, that can cause bodily injury.  Ramirez testified about whether Palmer knew he was not to possess a weapon, but she did not testify about the *nature* of the predicate offense. We find no abuse of the district court's discretion in its determination that Ramirez' testimony was admissible with regard to Palmer's parole status.  Ramirez' testimony about Palmer's conditions of parole went beyond the question of the "fact" of the prior conviction, but did not embrace either the nature or other details about that offense.  The government carefully tailored the testimony elicited from Ramirez to avoid any impermissible reference to the predicate offense, as well as to avoid any information which related to Palmer's character or propensity toward criminal behavior.  For this reason, we find no error in the admission of Ramirez' testimony.

Likewise, we find no error in the admission of the stipulation itself.  The stipulation apprised the jury that Palmer had a prior felony conviction, thus it was evidence of Palmer's status.  The district court later instructed the jury that "The parties have

6

stipulated that defendant has been convicted of a crime punishable by imprisonment for a term in excess of one year, and you should regard this second element as proven beyond a reasonable doubt." The stipulation was neither irrelevant nor inadmissible, regardless of Palmer's reasons for stipulating.[3]

Admissibility of the Parole Certificate

Neither the stipulation nor Ramirez' testimony included evidence about the nature of the prior conviction. This is not so regarding the parole certificate. The government argues that the parole certificate was admissible to show that Palmer fled from the police officers because he knew that he was not permitted to possess a firearm.[4] However, Ramirez' testimony established Palmer's awareness that he could not legally possess a firearm. Through her testimony, the jury heard evidence of the parole conditions prior to introduction of the parole certificate; the jury heard further evidence that Palmer knew these conditions before he ran from these police officers. Thus, at the time the parole certificate was offered, the government already had accomplished what it set out to do.

Unsatisfied with just having the testimony before the jury, the government introduced the certificate and, in so doing, overlooked language on the certificate which told the jury that

---

[3] Palmer asserts that he entered the stipulation in order to keep from the jury all evidence about his prior conviction.

[4] Palmer concedes that the evidence introduced provides, "at best, an attenuated inference that Palmer fled because he was on parole."

Palmer's prior conviction was one for which he received parole for life, and for which he was required to undergo drug/alcohol treatment.[5]

This information is similar to information about the nature of the predicate offense. Given the parties' stipulation, evidence of the predicate offense has no probative value apart from establishing Palmer's status. See, Chapman, 7 F.3d at 69, and Tavares, 21 F.3d at 4. The fact that Palmer was on parole for life and was subject to drug and alcohol treatment improperly focused part of the jury's attention toward matters which were not probative of the elements of the charged offenses. Though we find clear error in admission of the unredacted parole certificate, for the reasons more fully stated herein we conclude that the error was harmless under the unique facts of the case.

Prosecutorial Misconduct

Palmer asserts that the prosecutor (1) accused the defense counsel of attempting to deceive the jury, (2) attempted to shift the burden of proof to Palmer, and (3) argued outside the record evidence.

Counsel is accorded wide latitude during closing argument, and this court gives deference to a district court's determination regarding whether those arguments are prejudicial and/or inflammatory. United States v. Willis, 6 F.3d 257, 263 (5th Cir.

_____

[5] The record gives no indication that the jury did not receive the parole certificate as part of the case exhibits at the end of the trial. Moreover, defense counsel's assertion that the certificate was also published to the jury during the testimony of Ramirez was not rebutted by the government.

8

1993) (citation and internal quotation marks omitted). Our task in reviewing a claim of prosecutorial misconduct is to decide whether the misconduct casts serious doubt upon the correctness of the jury's verdict. Id. The three factors we consider in deciding whether to reverse the defendant's conviction due to improper prosecutorial argument are as follows: (1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction. United States v. Casel, 995 F.2d 1299, 1308 (5th Cir. 1993) (citation and internal quotation marks omitted), cert denied, ___ U.S. ___, 114 S.Ct. 1308, 127 L.Ed.2d 659 (1994). The magnitude of the prejudicial effect is tested in part by looking at the prosecutor's remarks in the context of the trial in which they are made  and attempting to elucidate their intended effect. Willis, 6 F.3d at 264; Casel, 995 F.2d at 1308.

The first challenged comment is as follows:

> Defense counsel wants you to focus on these little discrepancies:  was [Palmer] ten feet away, was he fifteen feet away.  Did he take two steps this way and then go north or did he run straight north.  He wants you to focus on those little, tiny, immaterial matters, because he wants to confuse you.  He wants to throw up a smoke screen.

According to Palmer, this was a comment on the exercise of his right to counsel or a claim that defense counsel used his skill to manipulate or mislead the jury.  Palmer cites as support for this argument United States v. McDonald, 620 F.2d 559, 564 (5th Cir. 1980).  Palmer also asserts that the prosecutor's comment that the

defense asked the jury to believe that the officers lied was a mischaracterization and was error. We disagree.

We find McDonald inapposite. There, the prosecutor's comments about defense counsel's presence during a search were improper because they likely gave rise, in the average juror's mind, to inferences which included (1) the attorney aided in or tolerated destruction of evidence, and (2) the defendant would not have gotten a lawyer unless he was guilty. By contrast, the context of the instant statements reveals that the prosecutor merely outlined his view of the defense strategy. See and compare, United States v. Wisenbaker, 14 F.3d 1022, 1028 (5th Cir. 1994); United States v. Frascone, 747 F.2d 953, 957-958 (5th Cir. 1984). Moreover, the testimony of the officers was such that the prosecutor's comment did not amount to a mischaracterization. We find no error in these comments.

Palmer also argued that the district court's comment to the jury, that argument of counsel was of no concern and was not evidence, exacerbated the error from the prosecutor's comments. We disagree. Viewed in its context, this comment was not error.

Prior to oral argument, the prosecutor asked the district court to prohibit defense counsel from referring to witnesses who did not testify. The district court ruled that, if the defense says the government did not subpoena the witnesses, then the government can say that the defense did not subpoena them. Defense counsel responded "All right. That's fine, judge . . . I mean, I'll agree to that." Defense counsel stated that he would

10

talk about the burden of proof, but would not talk about the government's failure to produce witnesses. In closing argument, defense counsel twice referred to unsubpoenaed witnesses. The second time, defense counsel further stated "You can ask yourself, well, what version would they have given if they were here? . . . If they're not subpoenaed, they're not going to be here." Palmer's second and third categories of alleged prosecutorial misconduct occurred during rebuttal when the prosecutor stated the following:

> [Prosecutor]: Ladies and gentlemen, defense counsel has the exact same subpoena power that the government has.
>
> [Defense Counsel]: Objection, your honor. Counsel is attempting to shift the burden of proof.
>
> The Court: Overrule the objection.
>
> [Prosecutor]: If he wanted to subpoena those police officers that weren't here, he could have done it. Why didn't he? They would have told you the same story that the two officers that were here told you.
>
> [Defense Counsel]: Objection, your honor. That's outside the record. It's improper.
>
> The Court: Overrule the objection.
>
> [Prosecutor]: Domingo and Bobby? He could have subpoenaed them if he wanted you to hear their stories. I didn't subpoena them, it's not necessary. You have the evidence, the facts that you need to convict Will Palmer, right here.

There was no further comment on the unsubpoenaed witnesses or the subpoena power of the respective parties. Viewed in context, we find no error in the prosecutor's response regarding the subpoena power of the defendant. Rather than an impermissible shift of the burden of proof, these comments were a response to defense counsel's argument. However, we do find that the prosecutor's comment on evidence outside the trial was impermissible even though

11

it was provoked.  It was error for the prosecutor to tell the jury what witnesses who did not testify would have said had they testified.

Harmless Error Analysis

We have determined that through the parole certificate, the jury received information which had a tendency to suggest a decision on an improper basis.  We have also found that the prosecutor's reference to evidence outside the record was an improper and unnecessary comment.  We now turn to examine whether these errors were harmless or warrant reversal.

An error is harmless if the reviewing court is sure, after viewing the entire record, that the error did not influence the jury or had a very slight effect on its verdict.  United States v. Quintero, 872 F.2d 107, 111 (5th Cir. 1989) cert. denied, 496 U.S. 905, 110 S.Ct. 2586, 110 L.Ed.2d 267 (1990), quoting United States v. Heller, 625 F.2d 594, 599 (5th Cir. 1980).  Reversal based on improper argument by the prosecutor is not called for when there has not been a strong showing of a deleterious effect upon the right to a fair trial.  Casel, 995 F.2d at 1308.

The jury heard evidence of the following:  Two experienced police officers saw Palmer at approximately 9:45 p.m.  He was about fifteen feet from them in the street when they first saw him and, for a moment, the headlights on their patrol car illuminated him. It appeared to both officers that Palmer was holding a weapon underneath his trench coat.  When they stopped to contact him, he turned to run.  His trench coat opened just enough for one of the

12

officers to see a weapon inside the coat. During the brief chase, the other officer saw Palmer throw or toss a long, dark object. When the chase ended, Palmer was handcuffed on the ground. The officer returned to the exact area where he had seen the object, only a few feet away from where Palmer lay on the ground, and found a sawed off shot-gun.

Palmer attempted to point out conflicts between the officers' testimony and argued that the officers were mistaken in what they thought they saw. Palmer did not assert that the officers lied. Instead, his defense was that the police officers were mistaken in that although they found a firearm in Palmer's vicinity, Palmer had not possessed it. Palmer highlighted differences in the officers' testimony, such as whether his hand held the weapon inside or outside the trench coat and the distance between Palmer and the officers when they saw him.

The officers' testimony was not identical. However, the variances were due to the different vantage points and different duties they exercised during the brief chase. One officer chased Palmer and never lost sight of him until the end of the chase. That officer saw Palmer toss the long dark object. The other officer saw the gun under the trench coat but had taken a different route than Palmer and the first officer in order to cut off Palmer's path of escape. The first officer did not say the object was a gun; the second officer did not say he saw Palmer throw down the gun. Nevertheless, the direct testimony between the two officers was such that the jury had a clear picture of what

13

occurred between the time the officers saw Palmer and the time he was apprehended.

To the extent that the jury's ability to believe the defense version of the facts was curtailed by the prejudicial information on the parole certificate, the admission of this evidence was harmless. However, in light of the direct evidence that the officers saw Palmer with the shotgun, we are sure that any effect upon the jury's verdict from this prejudicial information was very slight. For this reason, we find that the error in admitting this prejudicial information was harmless. Under different circumstances, the admission of the information on this parole certificate would require reversal.

For the same reason, we find it unlikely that the comment made during closing argument influenced the jury verdict. Moreover, Palmer has made no showing of a deleterious effect upon his right to a fair trial based upon this comment. We find that the prosecutor's comment does not rise to the level of reversible error. Accordingly, Palmer's conviction is affirmed.

CONCLUSION

The government concedes in brief that the parties' stipulation rendered irrelevant any specific evidence of the prior conviction, but contends that the stipulation does not remove from the jury's consideration the stipulated element of the offense. We have determined that the existence of the stipulation does not mean that evidence of the fact of Palmer's predicate offense is inadmissible. For this reason, we have no quarrel with the district court's

14

ruling on admission of Ramirez' testimony or admission of the stipulation. The admission of the unredacted parole certificate was error, as was the prosecutor's comment on evidence which had not been presented to the jury. Nevertheless, we find that Palmer's convictions must be AFFIRMED because under the circumstances of this case, these errors were harmless.

15