**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-10289

FACUNDO OCHOA,

Petitioner-Appellant,

VERSUS

JANIE COCKRELL, Director, Texas Department of
Criminal Justice, Institutional Division,

Respondent-Appellee.

Appeal from the United States District Court
For the Northern District of Texas, Fort Worth Division

(4:00-CV-1644-Y)

May 10, 2002

Before GARWOOD and DENNIS, Circuit Judges, and LITTLE,[*] District
Judge.

PER CURIAM:[**]

The issues in this appeal from the denial of habeas relief are

---

[*] Chief Judge of the Western District of Louisiana, sitting by
designation.

[**] Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

whether the state prosecutor violated the petitioner's Fifth Amendment rights by commenting on his failure testify and, if so, whether any resulting error was harmless. We need not decide the first question because we hold that the prosecutor's comments did not "have a substantial or injurious effect or influence" on the petitioner's conviction regardless of whether they violated the Fifth Amendment. The district court's order is therefore affirmed.

## I.  Facts and Procedural History

On March 10, 1998, petitioner Facundo Ochoa was tried in a Texas state court for aggravated assault of a child and indecency with a child.[1] The victim was the daughter of Ochoa's longtime sporadic girlfriend, Debbie Ortiz. Ortiz, Ochoa, and the victim were living with Ochoa's mother at the time in question.

During trial, the victim testified in detail about how Ochoa molested her twice over the span of a month. The first attack occurred in December 1995, when the victim was eleven years old. The victim was sleeping on the couch when she awoke to Ochoa fondling her breasts and buttocks. While she was still in a slumber, Ochoa removed her sweat pants and panties, pushed her legs apart, and forced his penis far enough into her vagina for it hurt. The victim testified that she was scared and that she pulled her legs together. Ochoa stopped and left the room when the victim

---

[1] See Tex. Pen. Code Ann. §§ 21.11, 22.021 (Vernon 1994).

2

moved, but after a few minutes, he returned and began fondling her and licking her neck.  He then forced his penis into her mouth.  It was approximately 1:30 a.m. and the victim could smell beer on Ochoa's breath.

The second incident occurred in January of 1996.  It was late in the evening, and Ochoa was alone with the victim while her mother was out running an errand.  Once again, Ochoa began rubbing the victim's breasts while she was sleeping on the living room couch.   The victim testified that when her mother returned from her errand, Ochoa stopped what he was doing and left the room.  When Ms. Ortiz walked into the living room, she found her daughter on the couch crying; the daughter then revealed that Ochoa had been molesting her.

The next morning, Ms. Ortiz brought her daughter to her mother's house and contacted Child Protective Services (CPS).  The case was assigned to Nora DeWitt, a CPS investigator.  Ms. DeWitt arranged for the child to have an examination on February 5, 1996, at a children's medical center.  The victim was examined by a CARE unit, which is a group of medical professionals specializing in forensic pediatrics.  Dr. Jan Leah Lamb, who headed the CARE team that examined the victim, testified in detail about her qualifications and the procedures for determining if a patient has been sexually molested.  Although she found no physiological evidence of abuse, Dr. Lamb testified that in her opinion, the victim had been molested.  She explained that due to the anatomy of

3

the vagina and the time that had lapsed between the assault and the examination, the lack of trauma to the victim's vagina did not rule out molestation. In fact, Dr. Lamb testified that there is no physical evidence of sexual abuse in most child abuse cases.

CPS investigator Nora DeWitt also concluded that Mr. Ochoa had molested the victim. As part of her investigation, Ms. DeWitt interviewed the victim, Ms. Ortiz, and Mr. Ochoa. In light of the CARE evaluation and her own investigation, Ms. DeWitt closed this case finding "reason to believe that abuse had occurred."[2]

Finally, the state presented evidence that Mr. Ochoa admitted to engaging in indecent acts with the victim. The victim's mother testified that when she confronted Mr. Ochoa with her daughter's allegations, he responded that "he had to do what he had to do. He couldn't get it from me, [so] he was going to get it from her." Ms. Ortiz further testified that Mr. Ochoa specifically admitted to fondling her daughter's breasts, but denied penetrating her.

The essence of the petitioner's defense was that the victim fabricated the molestation story to win her mother's attention and that the lack of physical evidence discredited any claims of penetration. Mr. Ochoa's strongest witness was Christina Martinez, Ochoa's fifteen-year-old step-niece who was friends with the victim

---

[2] Ms. DeWitt testified that when closing a child abuse case, CPS investigators classify the case in one of three ways: "One is reason to believe that abuse occurred, one being ruled out that abuse did not occur, and one of unable to be determined if abuse occurred or not."

during the time in question. Ms. Martinez testified that the victim told her that Mr. Ochoa had molested her. But when Martinez made clear that the allegation was nothing to joke about, the victim retracted her allegation stating that she was "just playing" and that "[n]othing really happened."

According to the petitioner, the victim was starved for attention from her mother and her home life was unstable. Witnesses testified that Ms. Ortiz would leave her daughter home alone while she was out all night and that Ms. Ortiz and Mr. Ochoa frequently engaged in violent arguments. Ms. Ortiz testified that she has regularly warned the victim since she was six-years-old not to let men make sexual advances toward her. The petitioner's theory was that Ms. Ortiz put the idea of making an outcry into the victim's head by frequently warning her about men and that the victim made the outcry hoping to gain the attention of her absentee mom. The lack of physical evidence, the petitioner argued, further undermined the state's case and discredited Dr. Lamb's conclusion that the victim had been assaulted.

Despite the petitioner's pleas, however, the jury convicted Mr. Ochoa on both counts, and he was sentenced to two concurrent prison terms of fifty-five years each. On direct appeal, the state appellate court affirmed Ochoa's conviction and sentence, and the Texas Court of Criminal Appeals refused his petition for discretionary review. Mr. Ochoa then filed a state application for habeas corpus relief; the Texas Court of Criminal Appeals denied

the petition without written order.

On September 28, 2000, Mr. Ochoa filed a petition for habeas relief under 28 U.S.C. § 2254 in the Northern District of Texas. The district judge referred the case to a magistrate judge, who issued findings, conclusions, and a recommendation that habeas relief be denied. On February 7, 2001, the district court issued its order adopting the magistrate judge's findings and recommendations, and granted summary judgment denying the petition for writ of habeas corpus.

The petitioner later filed an application for certificate of appealability (COA) in the district court, but the COA was denied. On May 19, 2001, however, Mr. Ochoa filed an application for a COA in this court. We granted Mr. Ochoa's application for COA on July 19, 2001, to review "whether his Fifth Amendment right was violated at trial when the prosecutor commented about his failure to testify, and whether any error was harmless."

## II. Analysis

To obtain habeas relief, a petitioner must either demonstrate that the state court's decision "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court

6

of the United States."[3]   A state court's decision is "contrary to" clearly established federal law if it "arrives at a conclusion opposite to that reached by th[e] [Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[4]   A state court's decision makes an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[5]   Although a district court may look to our rulings to support its decision as to whether the state court unreasonably applied federal law, "the focus of the habeas inquiry remains conflict with federal law established by the Supreme Court."[6]   A state court's determinations of factual issues are presumed correct and the applicant bears the burden of rebutting the presumption with clear and convincing evidence.

A.   **Comment on the Failure to Testify.**

The petitioner claims that he is entitled to habeas relief because the state prosecutor violated his Fifth Amendment rights by

---

[3] _Williams v. Taylor_, 529 U.S. 362, 412-13 (2000).

[4] _Id._

[5] _Id._

[6] _Ledford v. Thomas_, 275 F.3d 471, 474 n.2 (5th Cir. 2001).

7

commenting on his failure to testify. Prosecutor Barbara Medley made the following allegedly unconstitutional comments during closing arguments:

> PROSECUTOR: Now, there's also nothing in [the jury charge] that says how many witnesses you have to hear. There's no requirement that you hear any more than one witness or base your decision based [sic] on more than one witness'[s] testimony.
>
> Just because a defendant chooses to commit a crime with no witnesses around doesn't mean that he gets a free ride, okay? If you believe everything that [the victim] said beyond a reasonable doubt, you can base your decision solely on her testimony.
>
> DEFENSE: Objection on the comment on failure to testify.
>
> THE COURT: I didn't so interpret, but I will instruct Counsel not to refer to the Defendant not testifying.
>
> PROSECUTOR: I won't, Your Honor.
>
> DEFENSE: Can I have a ruling on my objection, please?
>
> THE COURT: I'll overrule your objection.
>
> PROSECUTOR: You watched her. You can judge her credibility. With any witness that you saw, you can believe everything they say or none of what they say or you can believe some of it and not believe some of it. You are the sole judge of the credibility of every single witness.
>
> And you saw that child get up there. You saw how she told you what happened. You heard her say how difficult it was. And pay attention to the details in what she told you and how that fits into the whole scheme of things.
>
> But we also brought you more than that. We also brought you her mother, which told you that this Defendant made some admissions to you.
>
> And Defense counsel is absolutely right. You can [sic] absolutely cannot consider the fact that the Defendant did not testify.

8

DEFENSE:  Comment on failure to testify.

THE COURT:  Overruled.

PROSECUTOR:  You cannot hold that against him.  But you also cannot speculate about any evidence that you did not hear.  You must base your decision –

DEFENSE:  Comment on failure to testify, Your Honor.

THE COURT:  Overruled.

PROSECUTOR:  You must base your decision solely on the evidence that you did hear and judge the credibility of the evidence that you did hear.

On direct review, the state appellate court found no constitutional violation in the prosecutor's remarks.  Relying primarily on Texas appellate court decisions, the court held that the comments were appropriate because they merely recited the trial judge's instructions and did not draw attention to information that only the petitioner could have provided.[7]

In Griffin v. California, the Supreme Court held that a state prosecutor may not comment on a defendant's failure to testify at trial: "[T]he Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution

---

[7]  Ochoa v. Texas, No. 2-98-134-CR, slip op. at 3-4 (Tex. App.–Fort Worth April 9, 1999, pet. denied) ("The prosecutor's statement sought to affirm that, indeed, [Ochoa] does have a right not to testify and that the jury could neither hold that against him nor hypothesize on what he might have said.  That is consistent with the jury's instructions during voir dire and in the jury charge.  The prosecutor did not rhetorically ask why [Ochoa] did not testify or call attention to evidence that could only be supplied by [Ochoa].").

on the accused's silence or instructions by the court that such silence is evidence of guilt."[8] We have clarified that "[t]he test for determining whether the prosecutor's remarks were constitutionally impermissible is: (1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence."[9]

In United States v. Johnston,[10] this court held under similar circumstances that a prosecutor's comment on the defendants' failure to testify constituted a Fifth Amendment violation. Similar to the prosecutor's comments in the present case, the prosecutor in Johnston took it upon himself to paraphrase the court's instruction on the failure to testify:

> [The jury charge] reminds you that a defendant has the right not to testify. That is constitutional right. It is yours. It is mine. It is theirs. Please value it. I do. Don't take into consideration the fact that whether or not anyone testified in this case is inappropriate.
>
> But what you also can't do in a situation like this is go back into that jury room and make up a story for them. That is impermissible by law. You can't play "what if." You can't say, "Well, if they testified, well, maybe they would have explained this. Maybe they would have said that." That's not allowed and that's

---

[8] 380 U.S. 609, 615 (1965).

[9] U.S. v. Grosz, 76 F.3d 1318, 1326 (5th Cir. 1996) (internal quotes and citations omitted).

[10] 127 F.3d 380, 398 (5th Cir. 1997).

fair.[11]

The court found it irrelevant that the prosecutor was restating the district court's instruction not to consider the defendants' failure to testify as evidence of their guilt. Regardless of the intent or legal accuracy of the statement, the court found that it had the effect of focusing the jury's attention on the defendants' failure to testify.[12] The Johnston panel also took issue with the prosecutor's claim that the jury could not speculate on what the defendants might have said. The panel reasoned that this claim impermissibly penalized the defendants for opting not to testify and noted that nothing prohibits the jury from "theorizing in their own minds as to a defendant's version of the facts in the absence of testimony from the defendant."[13]

Despite the similarities between this case and Johnston, it is not clear that the state court unreasonably applied Supreme Court precedent in holding that prosecutor Medley's statements did not violate Ochoa's Fifth Amendment rights. In United States v. Robinson,[14] the Supreme Court held that a prosecutor's direct comment on the defendant's failure to testify did not violate the Fifth Amendment because it was responsive to the defendant's

---

[11] Id.

[12] Id.

[13] Id.

[14] 485 U.S. 25, 32 (1988).

argument that the government never gave him an opportunity to respond to the charges against him. The court explicitly rejected the idea that any direct comment on the defendant's failure to testify constitutes error. Rather, the court explained that Griffin only prohibits prosecutors and judges "from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt."[15] Other post-Griffin Supreme Court cases also suggest that the Court has taken a narrower view of Griffin, prohibiting only "adverse comments" on a defendant's failure to testify.[16]

Thus, whether there was a constitutional violation in this case is a close question. Under a broad reading of Griffin and under our factually similar holding in Johnston, the prosecutor's statements appear to make an impermissible comment on the petitioner's failure to testify. The prosecutor's statements that the jury "cannot consider the fact that [Ochoa] did not testify" and that the jury "cannot speculate about any evidence that you did not hear" were direct comments on Ochoa's failure to testify and focused the jury's attention on the issue. Johnston, however, is

---

[15] Id. (quoting Baxter v. Palmigiano, 425 U.S. 308, 319 (1976)).

[16] See, e.g., Carter v. Kentucky, 450 U.S. 288, 298 (1981) ("[T]he Fifth and Fourteenth Amendments bar only adverse comment on a defendant's failure to testify, and that 'a judge's instruction that the jury must draw no adverse inference of any kind from the defendant's exercise of his privilege not to testify is a "comment" of an entirely different order.'") (quoting Lakeside v. Oregon, 435 U.S. 333, 339 (1978)); Palmigiano, 425 U.S. at 319.

12

a circuit court decision and does not constitute "clearly established law as determined by the Supreme Court."  There is a colorable argument under Robinson and other more recent Supreme Court cases that the prosecutor's comments were permissible because they were not "adverse comments" on Ochoa's failure to testify; i.e., the prosecutor did not suggest that Ochoa's failure to testify was evidence of his guilt.

We need not resolve this close question of constitutional law in order to decide this case.  As discussed below, we hold that the prosecutor's comments were harmless regardless of whether they violated Ochoa's Fifth Amendment rights.


**B. Harmless Error.**

Even if there were a Fifth Amendment violation, Ochoa is not entitled to habeas relief if the error was harmless.  The Supreme Court has instructed that the standard for establishing harmless error on collateral review is "less onerous" on the state than it is on direct review.[17]  In Brecht v. Abrahamson, the Court held that in a habeas case, an error is harmless unless it "had a substantial and injurious effect or influence in determining the jury's verdict."[18]  To obtain relief under this standard, a habeas petitioner must show that the error resulted in "actual

---

[17] Brecht v. Abrahamson, 507 U.S. 619, 636-38 (1993).

[18] Id. at 637.

13

prejudice."[19]  Because we determine that Ochoa has not established

actual prejudice under Brecht, he is not entitled to habeas relief.

This circuit's opinion in United States v. Palmer[20] provides

the appropriate framework for deciding on direct review whether to

reverse the defendant's conviction for improper prosecutorial

argument.  Under Palmer, three factors are relevant to the inquiry:

"(1) the magnitude of the prejudicial effect of the prosecutor's

remarks, (2) the efficacy of any cautionary instruction by the

judge, and (3) the strength of the evidence supporting the

conviction."[21]  Although under Brecht the petitioner must make an

even stronger showing of prejudice than a defendant on direct

appeal, the Palmer analysis is nonetheless instructive.

Under the first prong, we consider the magnitude of the

prejudicial effect of the prosecutor's remarks "in the context of

the trial" and attempt "to elucidate their intended effect."[22]  In

the context of this case, the prosecutor's statements probably had

little prejudicial effect because defense counsel raised Ochoa's

failure to testify before the prosecution did.  The prosecutor's

reference to Ochoa's failure to testify came only after Ochoa's

attorney prematurely raised the issue.  In context, it is clear

---

[19] Id.

[20] 37 F.3d 1080 (5th Cir. 1994).

[21] Id. at 1085.

[22] Id.

14

that the prosecutor's comments immediately preceding the defendant's first objection made no reference to Ochoa's failure to testify. The defense attorney's "[o]bjection on the comment on failure to testify" alerted the jury to the fact that Ochoa did not testify and elicited an instruction from the judge that emphasized the fact. Thus, by the time the prosecutor actually remarked on the failure to testify, the issue was already before the jury.[23]

The Supreme Court acknowledged the relevance of this point in Lockett v. Ohio.[24] In Lockett, the defendant argued that the prosecutor made indirect references to his failure to testify by repeatedly stating that his involvement in a conspiracy was "unrefuted" and "uncontroverted."[25] The Court held that there was no reversible error because the defendant's attorney drew the jury's attention to his failure to testify before the state did:

> Lockett's own counsel had clearly focused the jury's attention on her silence, first, by outlining her contemplated defense in his opening statement and, second, by stating to the court and jury near the close of the case, that Lockett would be the "next witness." When viewed against this background, it seems clear that the prosecutor's closing remarks added nothing to the impression that had already been created by Lockett's refusal to testify after the jury had been promised a

---

[23] We do not mean to suggest that the prosecution has carte blanche to discuss inadmissible evidence any time a defendant raises a premature objection. In the context of this case, however, and in light of the innocuous nature of the prosecutor's comments, we believe that he prosecutor's comments had little practical effect on the conviction.

[24] 438 U.S. 586, 595 (1978).

[25] Id.

defense by her lawyer and told that Lockett would take the stand.[26]

Furthermore, there is no indication that the prosecution intended to present Ochoa's failure to testify as evidence of his guilt. In the context of the state's closing arguments, the prosecutor's comments are merely responsive to defense counsel's premature objection. Thus, in light of the prosecution's benign intent, coupled with the fact that the defense counsel put Ochoa's failure to testify at issue before the state did, we believe that the prosecutor's comments had little prejudicial effect on Ochoa's conviction.

As to the second prong of the Palmer analysis, the trial court issued two cautionary instructions relevant to this case. During closing arguments, the district judge instructed the prosecutor in the presence of the jury "not to refer to the Defendant not testifying." Furthermore, the jury charge states that the jury "must not refer to or discuss any matters not in evidence." We have no reason to assume that the jury did not heed the trial court's instructions.[27] Moreover, when an objection to a jury charge is not properly preserved, the instruction must be clearly

---

[26] Id.

[27] See Lakeside v. Oregon, 435 U.S. 333, 340 & n.11 (1978) ("As this Court has remarked before: '[W]e have not yet attained that certitude about the human mind which would justify us in . . . a dogmatic assumption that jurors, if properly admonished, neither could nor would heed the instructions of the trial court . . . .'") (quoting Bruno v. United States, 308 U.S. 287, 294 (1937)).

erroneous and prejudicial to warrant reversal.[28]  Ochoa raises no objection to the court's cautionary instruction or the sufficiency of the jury charge.  Thus, the second Palmer prong also points to the harmlessness of any potential error.

In examining the third prong, we find convincing evidence supporting Ochoa's conviction. As stated above, the victim emotionally recounted the details of both molestations.  She was duly cross-examined and the jury had the opportunity to judge her credibility.  The jury also heard from the victim's mother, Debbie Oritz, who found the victim crying on the couch immediately after the second sexual assault.  Ms. Ortiz also testified that Ochoa admitted to assaulting her daughter because Ms. Ortiz was not satisfying his libido.  Finally, two professionals having extensive experience with child abuse cases concluded that Mr. Ochoa abused the victim.  Although there was no physical evidence of trauma to the child's genitalia, Dr. Lamb explained that the lack of physical evidence is common and that it is neither exculpatory nor inculpatory of sexual abuse.

In light of our Palmer analysis, Mr. Ochoa has not established that the statements in question "had a substantial and injurious effect or influence" on his conviction.  Each of the three Palmer factors weighs against a finding of "actual prejudice."  Thus, any potential error created by the prosecutor's reference to Ochoa's

---

[28] United States v. Olano, 507 U.S. 725, 734-35 (1993).

17

failure to testify was harmless under the standard announced in Brecht v. Abrahamson.

## III. Conclusion

This case presents a close question of whether the prosecutor improperly commented on Mr. Ochoa's failure to testify in his own defense. Regardless of whether the statements constitute a violation of Fifth Amendment right that no person "shall be compelled in any criminal case to be a witness against himself," any such violation was harmless under Brecht v. Abrahamson. Mr. Ochoa therefore has not established a right to habeas relief. The district court's ruling is AFFIRMED.