# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20172

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

KINDY STEVEN ROMERO-MEDRANO,

    Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**
August 6, 2018

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CR-50-1

Before REAVLEY, GRAVES, and COSTA, Circuit Judges.

PER CURIAM:*

A jury found Kindy Romero-Medrano guilty of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B) and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The district court sentenced Romero-Medrano to 135 months' imprisonment and twenty years' supervised release and ordered him to pay $10,397.68 in restitution. On appeal, Romero-Medrano challenges: (1) the district court's denial of his motion

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20172

for mistrial based on statements made by the Government during closing arguments; (2) a condition of supervised release contained in the written judgment but not orally specified by the district court at the sentencing hearing; and (3) the amount of the restitution order.

## I. The Motion for Mistrial

18 U.S.C. § 2252A(a)(2)(B) prohibits any person from "knowingly . . . distribut[ing] . . . any material that contains child pornography." "[D]ownloading images and videos containing child pornography from a peer-to-peer computer network and storing them in a shared folder accessible to other users on the network" can constitute illegal distribution within the meaning of § 2252A(a)(2)(B), but to obtain a conviction under that provision, the Government must prove beyond a reasonable doubt that the defendant engaged in such distribution "knowingly." *United States v. Richardson*, 713 F.3d 232, 234, 236 (5th Cir. 2013) (affirming conviction under § 2252A(a)(2)(B) where the defendant installed peer-to-peer file-sharing software, downloaded and stored child pornography through that software, and admitted that he "knew that what was in his 'shared' folder was made available to others through file sharing").

At trial, the Government presented evidence that Romero-Medrano installed a peer-to-peer file-sharing program called Wirestack on his computer and used that software to store files containing child pornography in a shared folder, thereby making those files accessible to other users over the internet. The Government's evidence also showed that on several dates during May and June of 2013, law enforcement used peer-to-peer file-sharing software to download video files containing child pornography that had been made available for sharing through a device located at Romero-Medrano's residence. On July 19, 2013, law enforcement searched the apartment where Romero-

2

No. 17-20172

Medrano lived and seized a laptop computer and external hard drive. Examination of those devices uncovered multiple files containing child pornography. Review of the devices also revealed that at some point between June 30 and July 19, 2013, the settings on Romero-Medrano's Wirestack software had been changed from their default setting—which allows for complete file sharing—to permit only partial file sharing.

Romero-Medrano did not testify or present any witnesses during the trial. Instead, defense counsel maintained that the Government had failed to meet its burden of proving beyond a reasonable doubt that Romero-Medrano "knowingly" distributed any files containing child pornography. To install Wirestack on a computer, a potential user must navigate through a series of screens that allow for the configuration of various program settings. At each step in the installation process, the user can simply click a button labeled "next" and proceed to the next step. If the user clicks "next" at each step without altering any settings, then the software's default settings—which allow for complete file sharing—remain in place. Defense counsel contended that there was "a definite possibility" that when installing the Wirestack software on his computer, Romero-Medrano "simply clicked next, next, next, next" and therefore did not "knowingly" enable the sharing of the files in question. In addition, defense counsel argued that the evidence that the program's sharing setting had been changed in the days prior to the Government's search demonstrated that Romero-Medrano "recognized that sharing was on" and "shut it off, or at least tried to."

During the Government's closing argument, the following exchange occurred:

> Prosecutor: The judge discussed with you direct and circumstantial evidence, and my trial partner discussed direct and

circumstantial evidence with you during voir dire. The fact that the defendant changed his settings [on the Wirestack software] is not evidence of anything other than he changed his settings. I believe the defense is going to ask you to speculate about why he changed his settings. But the reality is, the only evidence you have is that prior to June 30th, at some point they were set to fully share; and on July 19th, they were set to partially share. And the rules don't say, and the law doesn't say you get to speculate as to why they were changed. There is no evidence as to why they were changed.

Defense Counsel:   Your Honor, she is shifting the burden of proof.

The Court:   Okay. Ladies and gentlemen, the burden of proof, as I have told you more than once, is with the government. The government must prove guilt beyond a reasonable doubt. The burden never shifts to the—to the defendant. Everybody understands that, I'm sure. Okay.

Prosecutor:   There is no evidence that he did anything other than want to share.

Defense Counsel:   Your Honor, again, she has just said the same sentence again. She is shifting the burden because she has done it twice in a row. I move for a mistrial.

The Court:   Okay. The burden doesn't shift. The burden doesn't shift. And we can't—we can't make allegations about—in any case what the defendant did or did not show. That is simply not the defendant's job.

Prosecutor:   Your Honor, I am not saying that.

The Court:   I am not saying you are. I'm just explaining to the jury what the rules are.

On appeal, Romero-Medrano does not argue that the evidence is insufficient to support his conviction. Rather, he only argues that the district court erred by denying his motion for mistrial. Specifically, he contends that

the prosecutor's statements that "[t]here is no evidence as to why [the settings] were changed" and that "[t]here is no evidence that [Romero-Medrano] did anything other than want to share" constituted impermissible burden-shifting comments on Romero-Medrano's decision not to testify—particularly when construed in light of the prosecutor's subsequent requests that the jury make him "take responsibility" for his actions.

"This court reviews the denial of a motion for mistrial for abuse of discretion." *United States v. Velasquez*, 881 F.3d 314, 343 (5th Cir. 2018) (per curiam) (citing *United States v. Zamora*, 661 F.3d 200, 211 (5th Cir. 2011)). "A trial court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* at 335 (quoting *United States v. Caldwell*, 586 F.3d 338, 341 (5th Cir. 2009)).

"A prosecutor is prohibited from commenting directly or indirectly on a defendant's failure to testify or produce evidence." *United States v. Wharton*, 320 F.3d 526, 538 (5th Cir. 2003); *accord Velasquez*, 881 F.3d at 344. "A prosecutor's . . . remarks constitute a comment on a defendant's silence in violation of the Fifth Amendment if the manifest intent was to comment on a defendant's silence, or if the character of the remark was such that the jury would naturally and necessarily construe the remark to be a comment on a defendant's silence." *Velasquez*, 881 F.3d at 344; *accord Wharton*, 320 F.3d at 538. "[T]he comments complained of must be viewed within the context of the trial in which they are made." *Wharton*, 320 F.3d at 538 (quoting *United States v. Dula,* 989 F.2d 772, 776 (5th Cir. 1993)).

Romero-Medrano does not claim that the prosecutor's statements were "manifestly intended" as a comment on his silence at trial, and we conclude that the jury would not have "naturally and necessarily" construed them as such. Viewed in context, the jurors would have understood the prosecutor's

statements as arguments regarding the reasonable inferences that they could draw from the evidence presented by the Government, not as impermissible references to Romero-Medrano's decision not to testify. *See United States v. Morrow*, 177 F.3d 272, 299–300 (5th Cir. 1999) (holding that the prosecution's "generalized comments" regarding "some undisputed points" did not amount to improper commentary on the defendant's failure to testify). Furthermore, even if the prosecutor's comments were improper, the district court's prompt reminder to the jury that the burden of proof never shifted to Romero-Medrano prevented any prejudice that might have otherwise resulted. *See Velasquez*, 881 F.3d at 344 ("[A] curative instruction can militate against finding a constitutional violation, or become central to the harmless error analysis." (quoting *United States v. Ramey*, 531 F. App'x 410, 414 (5th Cir. 2013) (unpublished decision))). Accordingly, the district court did not abuse its discretion by declining to declare a mistrial.

## II. The Supervised Release Condition

At the sentencing hearing, the district court stated that, as a condition of supervised release, Romero-Medrano "shall not view, possess, or have under his control any nude depictions of children, sexually oriented or sexually stimulating materials." Following that hearing, the court entered a written judgment containing several "special conditions of supervision," including the following:

> The defendant shall not view, possess or have under his control, any nude depictions of children, sexually oriented or sexually stimulating materials, including visual, auditory, telephonic, or electronic media, computer programs or services. The defendant shall not patronize any place where such material or entertainment is the primary source of business. The defendant shall not utilize any sex-related telephone numbers.

No. 17-20172

Romero-Medrano argues that the written judgment's requirement that he "not utilize any sex-related telephone numbers" must be set aside because the district court did not orally pronounce that condition during the sentencing hearing. In cases such as this, where the defendant "had no opportunity at sentencing to consider, comment on, or object to [a] special condition[] later included in the written judgment," we review for abuse of discretion rather than plain error. *United States v. Franklin*, 838 F.3d 564, 566–67 (5th Cir. 2016) (quoting *United States v. Bigelow*, 462 F.3d 378, 381 (5th Cir. 2006)).

"[W]here there is a conflict between the oral pronouncement and the written judgment, the oral pronouncement controls." *United States v. Tang*, 718 F.3d 476, 487 (5th Cir. 2013) (citing *Bigelow*, 462 F.3d at 381). However, "[i]f the written judgment simply clarifies an ambiguity in the oral pronouncement, we look to the sentencing court's intent to determine the sentence." *Id.* (citing *United States v. Warden*, 291 F.3d 363, 365 (5th Cir. 2002)). Here, the district court's written restriction on Romero-Medrano's use of sex-related telephone numbers merely clarified the orally pronounced condition that he not have "under his control" any "sexually oriented or sexually stimulating materials." Indeed, Romero-Medrano does not object to the portion of the written judgment clarifying that "sexually oriented or sexually stimulating materials" include "auditory [and] telephonic . . . services." Consequently, the district court did not abuse its discretion by including the challenged provision in the written judgment.

### III. The Restitution Amount

Following the sentencing hearing, the district court held two additional hearings concerning restitution pursuant to 18 U.S.C. § 2259, which provides for mandatory restitution for various offenses, including possession and distribution of child pornography. Two victims featured in the materials

possessed by Romero-Medrano sought restitution. One individual with the pseudonym "Vicky" requested $10,000, while the other individual, known as "Sarah," requested $15,000. After considering the requests, the evidence submitted in support thereof, and the arguments presented by defense counsel and the Government at the hearings, the district court issued a written order and amended judgment directing Romero-Medrano to pay restitution in the amount of $3,944.35 to Vicky, and $6,453.33 to Sarah.

The district court arrived at those amounts as follows. The court began with each individual's total claimed economic losses—$4,462,040.96 for Vicky and $2,753,421.77 for Sarah—and then divided by the number of prior restitution orders each had received up to that point, plus one (to account for Romero-Medrano)—905 for Vicky and 384 for Sarah. This yielded $4,930.43 for Vicky and $7,170.37 for Sarah. The district court then used a 10 percent reduction to account for the "larger universe of offenders that includes future prosecuted defendants and offenders who are never prosecuted," and another 10 percent reduction out of recognition that "a possessor/distributor should not be the proportional equivalent to an initial abuser in a child pornography case." In Sarah's case, the district court applied a 10 percent increase after determining that Romero-Medrano, as a distributor, had "a greater proportional role in [her] losses than mere possessors" did. Applying a 20 percent total reduction in Vicky's case and a net reduction of 10 percent in Sarah's case yielded a final award of $3,944.35 for Vicky and $6,453.33 for Sarah.

Romero-Medrano argues that the restitution order should be vacated and the case remanded for further proceedings because the district court's calculations are not based on "reasonably reliable" predictions about the number of future offenders. This court "review[s] the propriety of a particular

No. 17-20172

[restitution] award for an abuse of discretion." *United States v. Jimenez*, 692 F. App'x 192, 200 (5th Cir. 2017) (unpublished decision) (quoting *United States v. Sheets*, 814 F.3d 256, 259 (5th Cir. 2016)).[1]

In *Paroline v. United States*, 134 S. Ct. 1710 (2014), the Supreme Court held that restitution is "proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." *Id.* at 1722. While the Court acknowledged that a district court's determination of the proper amount of restitution "involves the use of discretion and sound judgment" and often cannot be reduced to "a precise mathematical inquiry," it also identified "a variety of factors district courts might consider in determining a proper amount of restitution." *Id.* at 1728. According to the Court, those factors "could include": (1) "the number of past criminal defendants found to have contributed to the victim's general losses"; (2) "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses"; (3) "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted)"; (4) "whether the defendant reproduced or distributed images of the victim"; (5) "whether the defendant had any connection to the initial production of the images"; (6) "how many images of the victim the defendant possessed"; and (7) "other facts relevant to the defendant's relative causal role." *Id.* The Court emphasized that "[t]hese factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders," and that "[t]hey should rather serve as rough guideposts for determining an amount that fits the offense." *Id.*

---

[1] Romero-Medrano does not argue that the restitution awards were unauthorized by statute.

No. 17-20172

According to Romero-Medrano, the 10 percent reduction applied by the district court does not reasonably account for the potentially "larger universe of offenders" in this case. He maintains that, at a minimum, the district court should have divided each victim's total economic losses by double the number of restitution orders obtained up to that point in time. This approach, he asserts, is reasonable because "the past is predictive of the future." We need not assess the relative merits of Romero-Medrano's alternative approach because even assuming that it can produce a permissible award calculation in certain circumstances, the district court was not required to adopt it in the present case. As the *Paroline* Court stressed, district courts retain a wide degree of discretion in calculating the appropriate amount of restitution in individual cases. Nothing in the record demonstrates that the district court's 10 ten percent reduction was unreasonable here. Furthermore, this is not a case in which the district court failed to make *any* adjustment based on the likelihood of additional future offenders or in which the amount awarded is demonstrably excessive in relation to the amount assessed against comparable defendants. Nor is this a case in which the number of prior restitution orders calls into question the district court's basic methodology. *See United States v. Sainz*, 827 F.3d 602, 607 (7th Cir. 2016) (observing that "the 1/n method [may not be] appropriate for all cases because the restitution amount depends so heavily on the number of offenders previously sentenced," and that "[w]here n is very small or very large, a more nuanced method may be required"). We therefore conclude that the district court did not abuse its discretion in determining the amount of restitution in this case.

\* \* \*

AFFIRMED.