# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-30813

United States Court of Appeals
Fifth Circuit

**FILED**
August 15, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CHRISTOPHER G. WAGUESPACK,

Defendant - Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

Before HAYNES, GRAVES, and DUNCAN, Circuit Judges.

JAMES E. GRAVES, Circuit Judge:

A jury convicted Christopher G. Waguespack of knowingly distributing and possessing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(a)(5)(B). The district court sentenced Waguespack to 180 months' imprisonment on each count to run concurrently, followed by 10 years of supervised release. He now challenges his conviction and sentence on six grounds. We AFFIRM.

## I.   BACKGROUND

### A.   Investigation

In March 2015, Investigator Louis Ratcliff from the Louisiana Attorney General's Office conducted an undercover investigation of peer-to-peer

No. 18-30813

networks[1] for child pornography. Ratcliff used Torrential Downpour[2] to download over 400 images of child pornography from an IP Address in Baton Rouge, Louisiana. On May 5, 2015, he opened a file on his March investigation and authored a report on his investigation results. On June 13, 2015, Ratcliff conducted another investigation and downloaded over 200 images of child pornography from an IP Address in Baton Rouge, Louisiana. Ratcliff subpoenaed Cox Communications to provide the IP Addresses for the downloads that occurred on March 29–30, 2015, and June 13, 2015. Cox Communications informed Ratcliff that the IP Addresses belonged to Waguespack's father, Larry Waguespack, with whom Waguespack lived.

On September 24, 2015, officers executed a search warrant at Waguespack's residence. The officers seized a computer from Waguespack's bedroom. The computer contained software actively searching for and downloading files with file names indicative of child pornography. After a forensic examination, the computer was found to have encrypted space and

---

[1] Peer-to-peer file sharing is a means of Internet communication utilizing software that lets users exchange digital files through a network of linked computers. Users access peer-to-peer networks by downloading the peer-to-peer software from the Internet; this software is used exclusively for sharing digital files. Generally, after a user downloads or installs the software, either the user selects a folder to store downloaded files or the installation program designates the shared folder as the default folder into which files are automatically downloaded. Files that are downloaded into the shared folder (or downloaded into a separate folder but later placed into the shared folder) are available to anyone on the peer-to-peer network for downloading. Someone interested in sharing child pornography with other peer-to-peer network users need only leave or place such files in his shared folder, which other users may then access by searching for relevant terms and phrases.
*United States v. Richardson*, 713 F.3d 232, 233–34 (5th Cir. 2013).

[2] At trial, Agent David Ferris testified that Torrential Downpour is a BitTorrent program used by law enforcement to investigate peer-to-peer networks. It targets IP addresses that have recently shared child pornography and creates an activity log of the files involved.

2

anti-forensic software,[3] CCleaner & Eraser, installed. There were file paths with names indicative of child pornography that led to an "E-drive," but examiners were unable to locate an "E-drive" in the unencrypted space of the computer. The examiners were also unable to find any user-accessible child pornography on the computer. However, the examiners found over 2,800 images and four videos of child pornography in deleted thumbnail cache[4] in a deleted zip file in an unallocated space of the computer. The file names in the unallocated space were not indicative of child pornography.

## B.    Indictment & Superseding Indictment

Relevant here, the grand jury returned an indictment charging Waguespack with knowingly distributing child pornography on May 5, 2015 and June 13, 2015, and knowingly possessing child pornography on September 24, 2015. In a probable cause affidavit to support the search warrant application, Ratcliff  stated that at least one child pornography offense occurred on May 5, 2015. In fact, May 5, 2015, was the date that Ratcliff authored his investigation report and not the date that any of the offenses occurred.

Subsequently, the Government obtained a Superseding Indictment. The Superseding Indictment mirrored the original indictment except the date of the May 5, 2015 offense was changed to between March 29, 2015 and March 30, 2015. Waguespack pleaded not guilty to the counts in the Superseding Indictment.

---

[3] The Government's expert testified that anti-forensic software is used to cover a computer user's tracks.

[4] Cache files are files that a web browser automatically creates that may have been seen on the internet that are stored in hidden or inaccessible space.

No. 18-30813

## C.    Pre-Trial

Waguespack filed several pre-trial motions, including a motion for the production of the transcripts of the grand jury proceedings and a motion to suppress.  The district court denied both motions.

In the motion for production, Waguespack argued that the date discrepancy between March 29–30 and May 5 showed that Ratcliff possibly lied to the Grand Jury.[5]  He argued that the Government's knowing use of false testimony entitled him to the transcripts.  The district court denied the motion and found, *inter alia*, that Waguespack failed to show a particularized need for the transcripts.  The court found that Waguespack failed to present evidence that Ratcliff was lying, and not simply making an error.  The court further found that even if Ratcliff lied, the Superseding Indictment with the correct dates remedied any injustice.

In the motion to suppress, Waguespack argued that the evidence obtained from the search should have been suppressed because the search warrant application contained a material misstatement, violating *Franks v. Delaware*, 438 U.S. 154 (1978), as May 5 was listed instead of March 29–30. He argued that no judge would have found probable cause without the misrepresented dates.  After a hearing, the district court denied the motion and found that Waguespack failed to prove that Ratcliff made the statements "knowingly and intentionally, or with reckless disregard for the truth."  The Court also found that even if Ratcliff knowingly lied about the dates and the May 5, 2015 date was omitted, there was still sufficient information to support probable cause.

---

[5] March 29–30 is the date that Ratcliff provided to support the subpoena to Cox Communications.  May 5 is the date that Ratcliff used in his affidavit of probable cause to support the search warrant and the date that was listed in the original indictment.

**D.    Trial**

On October 16, 2017, the jury trial began.  Ratcliff was not a witness. The Government introduced Ratcliff's download logs through Agent David Ferris, another investigator in the Louisiana Attorney General's Office.  Agent Ferris was qualified as an expert in the field of online exploitation investigations and peer-to-peer file sharing.  Waguespack objected to the introduction of the exhibits related to Ratcliff's reports.  He claimed lack of foundation and inadmissible hearsay.  The objections were overruled.

The Government also called Waguespack's parents to testify. Waguespack's parents testified as to their knowledge of computers.  His mother testified that Waguespack's father, Larry, "tinker[ed]" with computers, but that Waguespack did not, and "[Waguespack] wasn't really into fixing other people's computers or anything like that . . . ."  She also testified that Waguespack is "knowledgeable [about computers] . . . he knows how to use them and he knows more than [she knows]."

Waguespack's father, Larry, testified that Waguespack was the only person that used the computer in Waguespack's room.  Larry also testified that he was knowledgeable of CCleaner as software "to get rid of . . . history folders, that kind of stuff and e-mail junk" and understood it as "something common . . . to clean [the computer] to keep it from getting viruses and stuff."  He learned about CCleaner from the internet and from Waguespack.  He testified that he and Waguespack discussed CCleaner years ago because Larry was getting viruses on his computer.  Larry also testified that he was knowledgeable enough about computers that he could build one from scratch.  He had not heard of Eraser, had minimal knowledge of encryption, and had only heard of BitTorrent from the investigation.

5

No. 18-30813

After the Government rested, Waguespack moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. The motion was denied.

The parties then presented their closing arguments. Waguespack's counsel stated the following in his closing:

> Ladies and Gentlemen, where is Louis Ratcliff? You heard from seven witnesses at this trial, and all but one testified about Louis Ratcliff. And the guy that didn't was the Cox Communications guy . . . . Every single piece of evidence in this case, came from Louis Ratcliff. The Government has the burden of proof in this case and every case where they're charging someone with a criminal offense, and they have to prove their case beyond all reasonable doubt, and yet the government did not call Louis Ratcliff as a witness.
>
> * * *
>
> This entire case, every single piece of evidence that you have to rely on was touched by Louis Ratcliff. Every single thing the government introduced to try to prove their case requires that you trust Louis Ratcliff, not just trust him, ladies and gentlemen, you have to trust him beyond a reasonable doubt because he's the source of the case, but the government didn't trust him enough to call him as a witness. They didn't call Louis Ratcliff to tell us why his images say March 29th and 30th, but every report says May 5th and his sworn affidavits say May 5th. They didn't call Louis Ratcliff to tell you that if he received those images in March, why did he wait until May 13th to put them in the evidence locker?
>
> * * *
>
> Why [sic] are all of the videos and images that Mr. Ratcliff supposedly downloaded, why are none of them on [Waguespack]'s computer when they show up to do the search? Louis Ratcliff didn't come and answer any of those questions because there's no explanation. There is no answer for those questions.

The Government stated the following in its rebuttal:

> The only person that brought up  Mr. Ratcliff here today was [Waguespack's counsel]. What I would simply  say to this point, that if [Waguespack's counsel] thought that Louis Ratcliff was going to help his side of this case, he has the same subpoena power as the United States government to demand that witnesses be

6

here. And I'm sure if Mr. Ratcliff was going to be that helpful, [Waguespack's counsel] would have had him in this courtroom talking to you, not just suggesting that it may have been something helpful.

The jury found Waguespack guilty of knowingly distributing and possessing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(a)(5)(B). The jury, responding to a special verdict form, also found that Waguespack possessed child pornography that involved prepubescent minors.

### E. Sentencing

The Presentence Investigation Report ("PSR") recommended, *inter alia*, a two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1 because there was anti-forensic software installed on Waguespack's computer. Waguespack objected to the enhancement and argued that the enhancement did not apply because he never took any action to delete or conceal evidence *after* he learned of the investigation. The district court overruled the objection.

The PSR calculated Waguespack's offense level as 39, inclusive of the enhancement. Based on Waguespack's offense level and criminal history category of I, his Guidelines' range was 262 to 327 months. The court granted Waguespack a downward variance and sentenced him below the Guidelines to 180 months' imprisonment on each count to run concurrently, followed by 10 years of supervised release.

Waguespack now timely appeals his conviction and sentence.

## II. DISCUSSION

### A. Waguespack's Conviction Is Proper.

Waguespack appeals his conviction on four grounds. He argues that: (1) the Government failed to prove beyond a reasonable doubt that Waguespack "knowingly" distributed and possessed child pornography; (2) the Government violated Waguespack's Sixth Amendment Confrontation Clause right by

7

No. 18-30813

failing to call Ratcliff as a witness; (3) the Government made improper comments in its rebuttal; and (4) the Government committed a *Brady* violation by failing to provide a copy of the grand jury transcripts to Waguespack.  We perceive no reversible error.

### 1. There was sufficient evidence to convict Waguespack of knowingly distributing and possessing child pornography.

We review Waguespack's claim that there was insufficient evidence to support the jury's verdict *de novo*.  *United States v. Hoffman*, 901 F.3d 523, 541 (5th Cir. 2018), *as revised* (Aug. 28, 2018), *cert. denied*, No. 18-1049, 2019 WL 536773 (U.S. May 20, 2019).  "We weigh the evidence 'in a light most deferential' to the jury verdict and give the party that convinced the jury the benefit of all reasonable inferences."  *Id.* (quoting *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005)).

"We must affirm the verdict unless no rational juror could have found guilt beyond a reasonable doubt."  *Hoffman*, 901 F.3d at 541 (quotation omitted).  However, "a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference."  *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011) (quotation omitted).  And, this court will not "credit inferences within the realm of possibility when those inferences are unreasonable."  *Id.* (quotation omitted).  Accordingly, we will overturn a guilty verdict "where the government has done nothing more than pile inference upon inference to prove guilt."  *Id.* (quotation omitted).

### a. "Knowing" Distribution

Waguespack concedes that "[p]lacing content in a shared folder on a peer-to-peer program amounts to distribution."  However, he argues that there was insufficient evidence to prove that he had the requisite knowledge of the distribution because, *inter alia,*: (1) there was no evidence that the default

No. 18-30813

settings were modified to show he had knowledge of the automatic file-sharing of the software; and (2) there was no evidence that he was on his computer or at home on March 29–30 to show that he had knowledge that the files were being transferred. He further argues that the Government even failed to provide evidence that *any* distribution or file sharing occurred on the relevant dates.

Under 18 U.S.C. § 2252A(a)(2), it is unlawful for a person to knowingly distribute child pornography in or affecting interstate or foreign commerce by any means. Downloading child pornography "from a peer-to-peer computer network and storing [it] in a shared folder accessible to other users on the network" is prohibited under the statute, but "the Government must prove beyond a reasonable doubt that the defendant engaged in such distribution 'knowingly.'" *United States v. Romero-Medrano*, 899 F.3d 356, 360 (5th Cir. 2018) (citing *United States v. Richardson*, 713 F.3d 232, 234, 236 (5th Cir. 2013)).

Weighing the evidence in the light most deferential to the jury verdict and giving the Government the benefit of all reasonable inferences, there was sufficient evidence for a rational jury to find Waguespack guilty beyond a reasonable doubt of knowingly distributing child pornography. At trial, the Government presented evidence that:

- A peer-to-peer file sharing software was installed on the computer in Waguespack's room.
- Waguespack was the sole user of the computer in his room.
- The peer-to-peer file sharing software notified users when files were being uploaded or downloaded.
- The software's default settings for the shared folder on the seized computer were changed.
- Waguespack had advanced technological proficiency.

9

- Agent Ratcliff downloaded child pornography using the peer-to-peer file sharing software from an IP Address in Waguespack's home.

- A user on the computer previously searched for, viewed, downloaded, and transferred child pornography using the file sharing software, including transferring child pornography after child pornography was distributed to Agent Ratcliff in March 2015.

- The computer seized from Waguespack's room contained over 2800 images of child pornography.

Taken together, the evidence is probative of Waguespack's knowledge and is sufficient to demonstrate that Waguespack "knowingly" distributed child pornography. The evidence was sufficient to support a jury finding of guilt beyond a reasonable doubt.

Waguespack relies on extra-circuit precedent, *United States v. Carroll*, 886 F.3d 1347 (11th Cir. 2018) to support his insufficiency argument. However, *Carroll* is distinguishable.

In *Carroll*, the Eleventh Circuit reversed a distribution conviction after finding that the Government failed to prove that the defendant was aware that the contents of his shared folder automatically distributed to the peer-to-peer network. 886 F.3d at 1353–54. The defendant argued that the Government "failed to present any evidence that he knew he was sharing child pornography files when they were automatically placed in a shared folder, and that he [could not] be held liable for knowing distribution without some showing that he consciously allowed others to access those files." *Id.* at 1353. The court agreed, finding that there was nothing in the record to indicate that the defendant was aware that the contents of his shared folder automatically distributed to the peer-to-peer network. *Id.* According to the court, "the government failed to put on any evidence that [the peer-to-peer network], by design, would have

required [the defendant] to authorize file sharing or in any way recognize that his downloaded files were being shared." *Id.* at 1354. The court noted that the design of each network may bear on the issue of knowledge in different ways. *Id.*

Most detrimental to Waguespack's argument that he lacked the requisite knowledge is the evidence that, by design, the software notified the user that files were being shared with others and that he altered the default settings of the software. Both are indicia of knowledge. Waguespack fails to meet his burden that "no rational juror could have found guilt beyond a reasonable doubt." *Hoffman*, 901 F.3d at 541 (quotation omitted).

### b.    "Knowing" Possession

Waguespack argues that the Government failed to prove beyond a reasonable doubt that he "knowingly" possessed child pornography on September 24, 2015, because the child pornography found on his computer was either cached files or deleted cached files. In addition, the child pornography files on his computer were located in an inaccessible portion of his hard drive.

Under 18 U.S.C. § 2252A(a)(5)(B), it is unlawful for a person to knowingly possess child pornography in or affecting interstate or foreign commerce by any means. To obtain a conviction under the statute, the Government must prove, *inter alia,* that a defendant "knowingly" possessed child pornography. *United States v. Terrell*, 700 F.3d 755, 764 (5th Cir. 2012) (per curiam). The possession may be actual or constructive. *United States v. Smith*, 739 F.3d 843, 846 (5th Cir. 2014).

"When illegal files are recovered from shared computers, courts permit an inference of constructive possession where the files' nature and location are such that [the] computer's owner must be aware of them." *United States v. Smith*, 739 F.3d 843, 847 (5th Cir. 2014). "Such an inference, however, must

be supported by evidence that 'the defendant had knowledge of and access to' the files." *Id.* (quoting *Moreland*, 665 F.3d at 150).

Weighing the evidence in the light most deferential to the jury verdict and giving the Government the benefit of all reasonable inferences, there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Waguespack knowingly possessed child pornography. The Government presented evidence that there were over 2800 child pornography images on the computer seized from Waguespack's room, the person using the seized computer was well-educated in computer usage, Waguespack was the sole user of the computer, anti-forensic and encryption software were discovered on the computer, child pornography was transferred to Agent Ratcliff from an IP Address at Waguespack's home, and path files with names indicative of child pornography were stored on the computer. Together, this evidence is probative of whether Waguespack had the requisite knowledge and ability to access the files and exercise dominion or control over them. *Cf. Moreland*, 665 F.3d at 148. Accordingly, Waguespack fails to meet his burden that "no rational juror could have found guilt beyond a reasonable doubt." *Hoffman*, 901 F.3d at 541 (quotation omitted).

### 2.    The district court did not clearly or obviously violate Waguespack's Confrontation Clause rights.

Waguespack argues that his rights under the Confrontation Clause were violated when the district court admitted child pornography images downloaded by Ratcliff and Ratcliff's accompanying Torrential Downpour logs. According to Waguespack, the Government's failure to call Ratcliff in its case-in-chief violated his right to confront the witness against him. The Government argues that the images and logs are machine-generated and are not statements of a person.

No. 18-30813

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Confrontation Clause bars the admission of 'testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had [ ] a prior opportunity for cross-examination.'" *United States v. Kizzee*, 877 F.3d 650, 656 (5th Cir. 2017) (quoting *Crawford v. Washington*, 541 U.S. 36, 53–54, (2004)). "[A] statement is testimonial if its primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* (quotation omitted).

Generally, this court reviews alleged Confrontation Clause violations *de novo*. *United States v. Ayelotan*, 917 F.3d 394, 400 (5th Cir. 2019), *as revised* (Mar. 4, 2019). However, where, as here, the issue was not raised at trial, this court reviews the issue for plain error.[6] *United States v. Martinez-Rios*, 595 F.3d 581, 584 (5th Cir. 2010). "To prevail, [Waguespack] must demonstrate that[:] (1) the district court erred, (2) the error was plain, (3) the plain error affected his substantial rights, and (4) allowing the plain error to stand would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Bree*, 927 F.3d 856, 859 (5th Cir. 2019) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Waguespack relies on *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), to support his argument that his rights were violated. In *Bullcoming*, the

---

[6] Waguespack conceded in his reply brief that he failed to raise a Confrontation Clause objection at trial. However, at oral argument, Waguespack's counsel "walk[ed] back" the concession and argued that the court should review the issue *de novo* because trial counsel preserved the issue. Oral Argument at 1:20–2:20. Counsel's citation to the record does not support finding that trial counsel preserved the issue or that the "objection was specific enough to allow the trial court to take testimony, receive argument, or otherwise explore the issue raised." *United States v. Burton*, 126 F.3d 666, 673 (5th Cir. 1997). Accordingly, we exercise plain error review.

"question presented [was] whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Id.* at 652. The district court admitted a forensic report into evidence certifying a defendant's blood alcohol level where the defendant had been charged with driving under the influence. The Government did not call the analyst who certified the report. Instead, the Government called another analyst who was familiar with the laboratory's testing procedures. The Court held that "surrogate testimony of that order does not meet the constitutional requirement. The accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." *Id.* However, as Justice Sotomayor noted in her concurrence:

> [*Bullcoming*] is not a case in which the State introduced only machine-generated results, such as a printout from a gas chromatograph. The State [] introduced [the original analyst's] statements, which included his transcription of a blood alcohol concentration, apparently copied from a gas chromatograph printout, along with other statements about the procedures used in handling the blood sample . . . Thus, [the Court did] not decide whether . . . a State could introduce (assuming an adequate chain of custody foundation) raw data generated by a machine in conjunction with the testimony of an expert witness.

564 U.S. at 673–74 (Sotomayor, J., concurring).

In *United States v. Ballesteros*, this court rejected the defendant's argument that the district court clearly or obviously violated his right under the Confrontation Clause by admitting into evidence a report detailing his movements from GPS tracking. 751 F. App'x 579, 580 (5th Cir. 2019) (mem.),

*cert. denied,* (U.S. Jun. 10, 2019) (No. 18-9205). We concluded that because the defendant did not cite, and we had not found, "any decision by this court holding that the output of a computer program, such as a GPS report, amounts to a hearsay 'statement' under the Sixth Amendment," the defendant failed to meet his burden. *Id.*

Similarly, here, Waguespack fails to meet his burden of establishing that the district court plainly erred in admitting the downloaded materials. Waguespack has not cited, and we have not found any case to support Waguespack's position that the machine-generated materials are statements of a witness or trigger the Confrontation Clause. Accordingly, Waguespack's argument fails.

### 3. The Government's rebuttal remarks were not improper.

Waguespack argues that the Government made improper comments during its rebuttal by referencing Ratcliff's absence. Because Waguespack timely objected to this issue, we review for abuse of discretion. *United States v. Stephens*, 571 F.3d 401, 407 (5th Cir. 2009).

"Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected." *Id.* at 407–408 (quotation omitted). "This court applies a two-step inquiry in analyzing claims of prosecutorial misconduct:" (1) whether the Government made improper remarks; and (2) whether the improper remarks prejudiced the defendant. *Id.* at 408.

"A prosecutor is prohibited from commenting directly or indirectly on a defendant's failure to testify or produce evidence." *Romero-Medrano*, 899 F.3d at 361 (quotation omitted). "A prosecutor's . . . remarks constitute a comment on a defendant's silence in violation of the Fifth Amendment if the manifest intent was to comment on a defendant's silence, or if the character of the

remark was such that the jury would naturally and necessarily construe the remark to be a comment on a defendant's silence." *Id.* at 392 (quotation omitted). "[T]he comments complained of must be viewed within the context of the trial in which they are made." *Id.* (quotation omitted).

In *Stephens*, we found that the Government's comment that both sides could have subpoenaed a witness was a response to the defendant's closing argument regarding a witness's availability and was not an attempt to shift the burden of proof.[7]   571 F.3d at 408.   We also found that even if the Government's comment was improper, it was not sufficiently prejudicial to warrant reversal because the district court provided a curative instruction and there was ample evidence at trial. *Id.*

Here, viewed in context, the Government's remarks were not improper. The jury would have understood the comments to be a response to the defendant's closing argument and not an attempt to shift the burden of proof. And, even if the remarks were improper, the jury instructions relating to the

---

[7] The exchange during the closing argument in Stephens' trial was as follows:

Defense counsel: The guns.  I suggested to you yesterday that they could have been bought on-line.  And who could they have been bought by? Daniel Lee Garrett.  We don't know much about him.  We know very little about him.  The Government could have brought him into court.  The Government could have subpoenaed him.  They could have found him.  They could have brought you this missing witness.  We know very little about him.

Government: I'm going to object, Your Honor.

The Court: What's your objection?

Government: Both sides could have done that with subpoenas.

Defense counsel: Of course both sides could have done it. But the point is it's the Government's burden to prove its case, and Mr. Costa knows that.

The Court: Okay. Go on. Continue.
*Id.* at 407 n.8.

Government's burden were curative. *See Stephens*, 571 F.3d at 408. Further, Waguespack fails to demonstrate that the remarks were sufficiently prejudicial to warrant reversal because there was ample evidence at trial to support the jury's verdict.

### 4.     The Government did not violate Waguespack's *Brady* rights by not disclosing the grand jury transcripts.

Waguespack argues that the district court erred in denying his motion to compel the production of the grand jury transcripts. Specifically, Waguespack argues that the date change from the first indictment to the superseding indictment triggered the Government's *Brady* obligations, and he was entitled to receive a copy of the transcripts. According to Waguespack, "[the] witness statements used in obtaining an indictment for the wrong date should have been available to [him] to determine what other defects may have existed in the Government's case."

"To establish a *Brady* violation, a defendant must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *United States v. Cessa*, 872 F.3d 267, 271 (5th Cir. 2017) (quotation omitted). "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (quotation omitted). "A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." *Id.* (quotation omitted).

Waguespack has not shown that the grand jury transcripts were material. He provides no support to demonstrate "a reasonable probability that, had the [transcripts] been disclosed to the defense, the result of the proceeding would have been different," and that the nondisclosure of the grand

jury transcripts undermined confidence in the outcome of the trial. *Cessa*, 872 F.3d at 271. He simply asks for them to determine "what other defects may have existed in the Government's case." Accordingly, Waguespack's challenge as a *Brady* violation fails.

### B.    Waguespack's Sentence Is Reasonable.

Waguespack appeals his sentence on two grounds. He argues that: (1) the district court improperly applied the obstruction of justice sentencing enhancement; and (2) his sentence is substantively unreasonable. We find no reversible error.

### 1.    Waguespack's sentence is procedurally reasonable.

Waguespack argues that his sentence is procedurally unreasonable because the district court erroneously applied an obstruction of justice sentencing enhancement.

A district court may apply a two-level sentencing enhancement under U.S.S.G. § 3C1.1 if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

U.S.S.G. § 3C1.1. "Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." *Id.* at Cmt. 1.

"A finding of obstruction of justice is a factual finding that is reviewed for clear error." *United States v. Zamora-Salazar*, 860 F.3d 826, 836 (5th Cir.), *cert. denied,* 138 S. Ct. 413 (2017). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *Id.* (quotation omitted).

No. 18-30813

The district court applied the obstruction of justice sentencing enhancement after finding that Waguespack's conduct was "purposefully calculated and thwarted the investigation or prosecution of the offense of conviction." The court found that, *inter alia*, the seized computer was actively searching for and downloading files with file names indicative of child pornography when law enforcement executed the search warrant, the computer's deleted file space contained file paths and file names indicative of child pornography, anti-forensic and encryption software were installed on the computer, and the anti-forensic software had been programmed with a task list of file paths with names indicative of child pornography.

Waguespack argues that the district court erred in applying the enhancement because "there was no evidence that [he] engaged in any conduct during the Government's investigation of his activities or even that he was aware that an investigation was about to commence." However, based on the plain language of the statutory commentary, the enhancement may be applied for conduct that occurred *prior* to an investigation if the conduct was "purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction," *see* § 3C1.1, Cmt. 1, which the district court specifically found in Waguespack's case.

In light of the record as a whole and the plain language of the statutory commentary, Waguespack fails to demonstrate that the district court clearly erred in applying the enhancement.

### 2.    Waguespack's sentence is substantively reasonable.

Waguespack argues that, despite his sentence falling below the Guidelines, his sentence is substantively unreasonable because the district court failed to account for 18 U.S.C. § 3553(a)(6).

We review the substantive reasonableness of a sentence under an abuse-of-discretion standard. *United States v. Halverson*, 897 F.3d 645, 651 (5th Cir.

2018).   However, "[a]ppellate review of the substantive reasonableness of a sentence is 'highly deferential,'" and a within-Guidelines sentence is entitled to the presumption of reasonableness.  *Hoffman*, 901 F.3d at 554–55.  The presumption is rebutted "only if the appellant demonstrates that the sentence does not account for a [18 U.S.C. § 3553(a)] factor that should receive significant weight, gives significant weight to an irrelevant or improper factor, or represents a clear error of judgment in balancing the sentencing factors." *United States v. Martinez*, 921 F.3d 452, 483 (5th Cir. 2019) (quotation omitted).

Section 3553(a)(6) requires courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  "[W]here a sentence is within the guidelines range, the unwarranted-disparity factor is not afforded significant weight."  *United States v. Martinez*, 739 F. App'x 245, 247 (5th Cir. 2018) (mem.) (citing *United States v. Diaz*, 637 F.3d 592, 604 (5th Cir. 2011)).

Because Waguespack's sentence was below the Guidelines, his sentence is entitled to the presumption of reasonableness.  His attempt to rebut the presumption by arguing that the district court failed to account for § 3553(a)(6) is unavailing because the unwarranted-disparity factor is not afforded significant weight in his case.  Even if it was, he fails to offer evidence that his sentence represents an unwarranted disparity with similarly situated defendants.  *See Martinez*, 739 F. App'x at 246–47.  Waguespack includes statistics of sentences for child pornography offenses, but "[n]ational averages of sentences that provide no details underlying the sentences are unreliable to determine unwarranted disparity because they do not reflect the enhancements or adjustments for the aggravating or mitigating factors that distinguish individual cases." *United States v. Willingham*, 497 F.3d 541, 544 (5th Cir. 2007).  The statistics that Waguespack provides "disregard individual

circumstances and only reflect a broad grouping of sentences imposed on a broad grouping of criminal defendants; consequently, they are basically meaningless in considering whether a disparity with respect to a particular defendant is warranted or unwarranted." *Id.* at 544–45.

The district court stated that it considered all the factors in fashioning Waguespack's sentence. Of note, the district court seemed to give significant weight to the victim impact statements and Waguespack's offense being a serious offense which affected many people.

The district court did not abuse its discretion in sentencing Waguespack.

## III.    CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.